IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN CARROLL | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 15-1720 |
| | : | |
| BERNICE S. FEIN, ET AL. | : | |

**MEMORANDUM**

**McHUGH, J.**  **JULY 13, 2018**

This case involves a dispute over the assets of an estate. Plaintiff Stephen Carroll is an attorney appointed by court order to serve as the Administrator of the Estate of Leonard J. Moskowitz. Mr. Carroll was appointed by the Orphans' Court Division of the Delaware County Court of Common Pleas because of concerns about transfers of assets both before and after the death of Mr. Moskowitz. Plaintiff claims that Defendant Michael Fein abused his authority as the holder of a Power of Attorney for the late Mr. Moskowitz when he transferred ownership of certain assets from Mr. Moskowitz to his mother, Defendant Bernice Fein, and himself. Plaintiff further contends that both Fein, an attorney, and his mother, wrongfully converted assets of the estate. The claims raised here essentially mirror those that were pursued in Orphans' Court, albeit under different legal theories, and as discussed in my earlier memorandum, this case to a large degree, albeit not exclusively, is in in the nature of a protective action.

As this matter proceeded, the underlying state case progressed as well, and ultimately I stayed this action, including the parties' cross-motions for summary judgment, pending resolution of the claims in Orphans' Court. After many years and multiple appeals, that case is now definitively resolved, *In re Estate of Moskowitz*, ___ Pa. ___, 181 A.3d 1080 (2018), with Plaintiff prevailing on every claim. I continued to hold this matter in suspense to allow the

1

parties time for settlement discussions. It appears, however, that negotiations have failed, and I am therefore reactivating this case to address the pending motions.

In Defendants' Motion, they argue that the statute of limitations has run on the Administrator's conversion claim and that the existence of an adequate legal remedy deprives this court of equity jurisdiction. In the Administrator's Motion, he argues that the judgment rendered in a parallel state court proceeding entitles him to summary judgment on the merits based on issue preclusion.

For the reasons that follow, Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's claims for legal damages. As to Plaintiff's equitable claims, they are now largely moot, but to the extent that they are not, they are barred because there was an adequate remedy at law until the statute of limitations expired.

## I.     Facts

In 2000, Leonard Moskowitz granted a Power of Attorney (POA) to lawyer Michael Fein, one of the two defendants in this case. In January and February 2009, Mr. Fein invoked his POA to transfer assets to his co-defendant, Bernice Fein, Mr. Moskowitz's long-time companion and Mr. Fein's mother.

Specifically, Mr. Fein conveyed a house in Philadelphia from Mr. Moskowitz to Mr. Moskowitz and Ms. Fein, as joint tenants with right of survivorship. Mr. Fein also transferred roughly $600,000 in securities from an account solely in Mr. Moskowitz's name to a joint account held by Mr. Moskowitz and Ms. Fein. Some weeks later, these securities were transferred to a third account belonging to Mr. and Ms. Fein.

Shortly thereafter, in March 2009, Mr. Moskowitz died testate. In his will, he named Ms. Fein and his friend, Joshua Taylor, as co-executors. Moskowitz also bequeathed his personal

property to Ms. Fein, and left the balance of the Estate in trust for her, with his nephew, Joseph Fein, as beneficiary upon Ms. Fein's death.

In April 2009, Mr. Taylor petitioned for appointment as sole executor of the Estate, alleging that Mr. Fein had exercised his POA unlawfully and that Ms. Fein had a conflict of interest that prevented her from pursuing the claim. In her answer to Mr. Taylor's petition, Ms. Fein raised the issue of Mr. Moskowitz's state of domicile, claiming that he was a resident of New Jersey when he died and that his will should therefore be probated there. The parties spent the next twenty-one months litigating the issue of Mr. Moskowitz's domicile. In April 2011, the Delaware County Orphans' Court settled the matter in Mr. Taylor's favor when it ordered the Delaware County Register of Wills to probate Mr. Moskowitz's will.

In November 2011, more than two-and-a-half years after Mr. Fein executed the disputed transfers, Mr. Taylor and Ms. Fein renounced their rights to administer the Estate in favor of a neutral administrator. Later the same month, the Orphans' Court appointed Plaintiff Stephen Carroll as Administrator *de Bonis Non Cum Testamento Annexo*.

In April 2012, responding to a petition from Mr. Carroll, the Orphans' Court ordered Mr. Fein to file an accounting of the assets he transferred from Mr. Moskowitz pursuant to his POA. In August 2012, Carroll sought and obtained a preliminary injunction enjoining the Feins from dissipating or transferring the assets identified in Mr. Fein's initial accounting. While it granted Carroll's preliminary injunction, the Orphans' Court found that Fein's initial accounting did not enable the court to ascertain the precise scope or timing of the disputed asset transfers. It therefore ordered Fein to submit a more thorough accounting. This Fein repeatedly failed to do, thereby prolonging the proceeding by several months.

Finally, in October 2013, the court granted partial summary judgment to Carroll, holding that the transfers had exceeded the scope of Mr. Fein's POA, and ordering the Feins to return all assets that Mr. Fein had transferred under the POA.

The Feins appealed to the Pennsylvania Superior Court arguing, among other things, that Carroll's claims were time-barred by the two-year statute of limitations set forth in 42 Pa. Cons. Stat. § 5524. The Superior Court disagreed, holding that "the Estate's action in the Orphans' Court to recover transferred assets was equitable in nature," and that the statute of limitations was therefore relevant "only as a frame of reference to evaluate any purported delay in support of a claim of laches." Pl.'s Resp. Br., Ex. A, at 10, 18, ECF No. 34-2.

In weighing whether laches applied, the court stressed that Ms. Fein was to blame for Carroll's delay in bringing the claim. According to the court, because Ms. Fein was co-executor of Mr. Moskowitz's estate, her consent was necessary before the estate could sue for the return of wrongfully transferred assets. Ms. Fein withheld this consent, choosing instead to raise the issue of whether Mr. Moskowitz was domiciled in New Jersey. It was only after the two-year statute of limitations had run that Ms. Fein renounced her right to administer the estate, leading to Mr. Carroll's appointment and his suit on behalf of the estate. Under these circumstances, the court refused to find that the Feins would be unduly prejudiced by allowing the suit to proceed and concluded that any laches defense therefore failed as a matter of law.

The Superior Court issued its opinion on May 8, 2015. On September 28, Orphans' Court Judge Joseph P. Cronin issued a decree re-ordering the Feins to return the illegally transferred Philadelphia property and the securities, which it valued at $1,278,980. Citing the Feins' repeated instances of noncompliance with court orders, Judge Cronin announced his intention to issue a writ of attachment pending the Feins' appeal of the judgment.

4

Against the backdrop of state court litigation, Plaintiff Carroll initiated the present, parallel action in federal court on April 3, 2015. Plaintiff asserts claims based on conversion and unjust enrichment and seeks compensatory and punitive damages, attorneys' fees, and "restitution to the Estate of the Estate's assets transferred and/or received by Defendants." Compl. ¶¶ 41–43, ECF No. 1. In the meantime, following several other appeals, Plaintiff won in state court. That victory, however, does not render this case moot, as Plaintiff here seeks at least one legal remedy not available in Orphans' Court—punitive damages.

## II.     Summary Judgment Standard

These Motions are governed by the well-established test set forth in Federal Rule of Civil Procedure 56(a), as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Because no material fact is in dispute, the issues are purely ones of law.[1]

## III.    Discussion

### A. Defendants' Motion for Summary Judgment.

Defendants argue that Plaintiff's claims for legal damages are subject to the two-year statute of limitations imposed by 42 Pa. Cons. Stat. § 5524,[2] and that more than two years have

---

[1] The parties agree on very little in this case, but a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Id.* at 247–48.

[2] In pertinent part, 42 Pa. Cons. Stat. §5524 imposes a two-year statute of limitations on:

> (3)     An action for taking, detaining or injuring personal property, including actions for specific recovery thereof.
>
> . . .
>
> (7)     Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any

passed since the unlawful transfer. Plaintiff does not dispute this assertion, but maintains that his claims are timely under three equitable tolling doctrines: the discovery rule, fraudulent concealment, and continuing tort. Because I find that none of these equitable tolling doctrines apply, I conclude that Plaintiff's claims for legal damages are time-barred and grant summary judgment for the Defendant with respect to Plaintiff's claims for legal damages.

        i.        Discovery rule

The discovery rule is an equitable doctrine that "tolls the limitations period until the plaintiff learns of his cause of action or with reasonable diligence could have done so." *Stephens v. Clash*, 796 F.3d 281, 284 (3d Cir. 2015) (citations omitted). Plaintiff maintains that he was unable to discover the full extent of Defendants' tortious acts until May 2013, when Mr. Fein finally produced a proper accounting in Orphans' Court. Defendants dispute that assertion, but argue that the discovery rule is inapplicable in any case because Plaintiff's suit is a survival action.

A survival action "is a continuation in the deceased's personal representative of the cause of action which accrued to the deceased under the common law." *Mohney v. Pennsylvania*, 809 F. Supp. 2d 384, 389 (W.D. Pa. 2011). In other words, a survival action is an action brought by a decedent's estate that could have been brought by the decedent himself had he survived.

In *Anthony v. Koppers Co.*, the Pennsylvania Supreme Court held that the discovery rule was inapplicable in survival actions. 496 Pa. 119,120, 436 A.2d 181, 182 (1981). *Anthony* concerned wrongful death and survival actions alleging negligence, strict liability and breach of

---

      other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

warranty. *Id.* at 121, 436 A.2d at 183. The actions were brought after the applicable statute of limitations had run, and the question before the court was whether the discovery rule had tolled the limitations period. *Id.* In deciding that the discovery rule was inapplicable to a survival action, the *Anthony* court employed reasoning aptly summarized by the Third Circuit:

> The court reasoned that the survival statute, unlike the wrongful death act, does not create a new cause of action in the decedent's representatives, but instead preserves a cause of action possessed by the decedent during his lifetime. Therefore, the court concluded that it would be logically impossible to toll the accrual of the cause of action until some time *after* the decedent's death (*i.e.,* upon the survivor's discovery of the decedent's injury).

*Deleski v. Raymark Indus., Inc.*, 819 F.2d 377, 380 (3d Cir. 1987).

Because Mr. Fein transferred assets while Mr. Moskowitz was still living, Defendants argue that Plaintiff's conversion claim is a survival action brought on Moskowitz's behalf. Plaintiff does not dispute that he is bringing a survival action, rather, he argues that the discovery rule should apply here, notwithstanding the rule announced in *Anthony*. According to Plaintiff, *Anthony* and the unbroken line of cases following it are distinguishable because each concerned personal injury claims where the allegedly tortious conduct giving rise to the survival action caused the decedent's death. Noting that Mr. Fein's transfer of assets did not injure or kill Mr. Moskowitz, Plaintiff asks that *Anthony* and the cases following it be limited to their facts.

Plaintiff cites no authority to support his narrow reading of *Anthony*, and the decision in *Anthony* leaves little room for the distinction he urges now. The rule announced in *Anthony* appears to be based on an abstract principle equally applicable in all survival actions. If it is "logically impossible" to toll the accrual of a cause of action possessed by a decedent during his lifetime "until some time after the [his] death," it would not seem to matter whether the survival action in question concerned a personal injury claim or not. *Deleski*, 819 F.2d at 380. I cannot reconsider a settled matter of Pennsylvania law based solely on what seems to be a distinction of

7

no apparent legal significance. I therefore find that *Anthony* is controlling in this case, barring application of the discovery rule.

    ii.  Fraudulent concealment

 Plaintiff next invokes the doctrine of fraudulent concealment to argue that his claims are not time-barred. Fraudulent concealment "is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Krapf v. St. Luke's Hosp.*, 4 A.3d 642, 650 (Pa. Super. 2010). A "defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient." *Molineux v. Reed*, 516 Pa. 398, 403, 532 A.2d 792, 794 (1987). However, for the doctrine to apply, a "defendant must have committed some affirmative independent act of concealment upon which a plaintiff justifiably relied. . . . The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence." *Krapf*, 4 A.3d at 650.

 Plaintiff points to two actions by the Defendants, which he claims constitute concealment: Ms. Fein's initiation in 2009 of the protracted litigation regarding Mr. Moskowitz's domicile, and Mr. Fein's repeated failure to render an accounting of the estate's assets when ordered to do so by the Orphans' Court in April 2012. Plaintiff characterizes the latter action as "an attempt by a savvy Defendant to continue to have the benefit of assets and funds which were not his . . . while resisting for as long as possible the obligation to turn over said assets." Pl. Resp. to Mot. Summ. J. at 14, ECF No. 34-1.

 That may be the case—and the Pennsylvania courts certainly appear to have reached that conclusion—but Plaintiff fails to establish that Defendants' actions concealed Mr. Fein's transfer

8

of assets, or that their actions induced the estate to abandon its attempt to reclaim those assets. The record indicates that, prior to the litigation over Mr. Moskowitz's domicile, Ms. Fein's co-executor, Mr. Taylor, was aware that Mr. Fein had exercised his POA to transfer assets belonging to Mr. Moskowitz and had taken initial steps to reclaim those assets. Similarly, while Mr. Fein's repeated failure to render a satisfactory accounting made it more difficult for the estate to locate and value the missing assets, it did not conceal the underlying transfer of those assets. Finally, at no point did Plaintiff drop his suit due to Mr. Fein's intransigence. Rather, in August 2012, after Mr. Fein submitted the first of several inadequate accountings, the Plaintiff filed a motion seeking a preliminary injunction.

In short, although the Defendants hindered the Plaintiff's ability to reclaim the transferred assets, they did not do so through fraud or concealment that caused the Plaintiff to abandon his claim. I therefore find that the doctrine of fraudulent concealment is inapplicable in this case.

        iii.        Continuing tort

Finally, Plaintiff argues that his claim is timely under the doctrine of continuing tort. Under Pennsylvania law, a cause of action normally "accrues when the plaintiff could have first maintained the action to a successful conclusion." *Fine v. Checcio*, 582 Pa. 253, 266, 870 A.2d 850, 857 (2005). Thus, under normal circumstances, "the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." *Id.* The continuing tort doctrine is an exception to this general rule that applies when a plaintiff alleges a continuing pattern of misconduct. *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). In such cases, "an action is timely so long as the last act evidencing the continuing practice falls within the limitations period" and courts "will grant relief for . . . earlier related acts that would otherwise be time barred." *Id.*

Courts most frequently apply the continuing torts doctrine in employment discrimination suits, where "the very nature of hostile work environment claims involves repeated conduct that occurs over a series of days or perhaps years." *Barra v. Rose Tree Media Sch. Dist.*, 858 A.2d 206, 213 (Pa. Commw. Ct. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). The continuing torts doctrine is essential in the employment discrimination context because "claims are based on the cumulative effect of individual acts" that "may *not* be actionable" in isolation. *Id.* However, "Pennsylvania case law emphasizes that when harm is permanent and can be compensated in a single action, the party cannot escape the defense of the statute of limitations." *Dellape v. Murray*, 651 A.2d 638, 640 (Pa. Commw. Ct. 1994).

Plaintiff argues that Defendants' conversion of Mr. Moskowitz's assets "continued over the six years following his death" because Defendants spent those funds for their own benefit during that period. Pl. Resp. to Mot. Summ. J. 16, ECF No. 34-1. "Although relatively few . . . Pennsylvania decisions have applied the continuing tort theory to intentional tort claims," *Brillhart v. Sharp*, 2008 WL 2857713, at *5 (M.D. Pa. 2008), those that have addressed it reveal fatal flaws in Plaintiff's arguments.

In *Dellape v. Murray*, the Pennsylvania Commonwealth Court refused to apply continuing torts doctrine where a completed action inflicted continuing harm. 651 A.2d at 640. The Delapes, owners of a small business, alleged that Dennis Murray, the local school superintendent, tortiously interfered with their business relations when he banned area high school students from patronizing their store. *Id.* at 639. According to the Delapes, Murray's tortious interference was a continuing tort because their business suffered losses each day that the ban was in effect. *Id.* While the court acknowledged that the plaintiffs had suffered a continuing harm, it refused to apply continuing torts doctrine because "the alleged tort in this

10

matter is one that arises from completed conduct," namely Murray's issuance of the ban. *Id.* at 640. Thus, the court found that "[m]erely because the Delapes harm is continuous in nature does not make their cause of action . . . a continuing tort." *Id.*; *see also CBG Occupational Therapy Inc. v. Bala Nursing & Ret. Ctr.*, 2005 WL 280838, at *1 (Phila. Com. Pl. 2005) (Sheppard, J.) ("A continuing tort sufficient to toll the statute of limitations is occasioned by continual unlawful acts, *not by continual ill effects from an original violation.*") (emphasis in original).

Like *Delape*, this case concerns discrete unlawful acts followed by a continuing harm. Mr. Fein's transfers of Mr. Moskowitz's assets entitled Moskowitz (and later the Estate) to seek immediate relief when they occurred. Plaintiff bases his continuing torts claim on the Estate's ongoing deprivation, but the case law makes clear that there is a crucial distinction between the wrongful acts that give rise to liability and a lingering harm. I therefore find that continuing tort doctrine is inapplicable in this case.

Because the statute of limitations has run on Plaintiff's claims for legal damages, and because none of the recognized doctrines for equitable tolling applies on these facts, Defendants' Motion for Summary Judgment must be granted as to Plaintiff's claims brought under common law. This is not inconsistent with the result reached in state court, because the claims there were rooted in equity, and the doctrine of *laches* applied by the Pennsylvania courts is broader in scope and more flexible in application than the rules for tolling a legal claim for damages.

The question then becomes whether Plaintiff's equitable claims survive, and they do not. Putting to one side the issue of mootness, given Plaintiff's success in state court, and assuming that Plaintiff seeks damages that are greater than were available in an Orphans' Court proceeding, the existence of a remedy at law, albeit one that is time-barred, eliminates Plaintiff's ability to seek damages in a parallel proceeding brought in equity. That is so because under

11

Pennsylvania law the proper avenue for recovery of damages is an action at law. *Meehan v. Cheltenham Township*, 410 Pa. 446, 189 A.2d 593 (1963); *Sixsmith v. Martsolf*, 413 Pa. 150, 196 A.2d 662 (1964). In an analogous context, the Court of Appeals has held that where claims brought under common law are properly dismissed, equitable claims seeking the same relief are also barred. *Steamfitters Local Union 420 Welfare Fund v. Philip Morris*, 171 F.3d 912, 936 (3d Cir. 1999). In the context of equity jurisdiction, if the expiration of the statute of limitations were deemed sufficient to establish the "absence of a remedy of law," time limitations would be rendered meaningless. Accordingly, jurisdiction over Plaintiff's equitable claims does not exist.

B. Plaintiff's Motion for Summary Judgment

Plaintiff's affirmative Motion, filed before he prevailed in state court, sought summary judgment on his conversion claim, invoking principles of collateral estoppel. To the extent that the motion is not moot, Plaintiff's legal claims for damages are barred by the statute of limitations. And because Plaintiff had an adequate remedy at law, the Court cannot assume equity jurisdiction.

An appropriate order will issue.

    /s/ Gerald Austin McHugh
United States District Judge